HATCH LAW, PC
RYAN E. HATCH (235577)
133223 Washington Blvd., Suite 302
Los Angeles, California 90066
Telephone: (310) 279-5076
Facsimile: (310) 693-5328
E-mail: ryan@hatchlaw.com

REEVES & BRIGHTWELL LLP
MANASI RODGERS (TX SBN 24090361)
(*Pro Hac Vice Application Forthcoming*)
3103 Bee Caves Road, Suite 240
Austin, Texas 78746
Telephone: (512) 334-4500
Facsimile: (512) 334-4492
E-mail: mrodgers@reevesbrightwell.com

Attorneys for Plaintiff
ACTIAN CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ACTIAN CORPORATION | Case No. 5:25-cv-09136 |
| Plaintiff, | |
| v. | **ORIGINAL COMPLAINT** |
| AUTOCLERK, INC. AND BEST WESTERN INTERNATONAL, INC. | |
| Defendants. | |

Actian Corporation ("Actian" or "Plaintiff"), by and through its attorneys, files its Original Complaint against AutoClerk, Inc. ("AutoClerk") and Best Western International, Inc. ("Best Western") (collectively "Defendants") and hereby pleads and alleges as follows:

### PARTIES

1.    Plaintiff Actian Corporation is a Delaware corporation with its principal place of business at 2600 Great American Way, Suite 401, Santa Clara, CA 95054.

2.     Defendant AutoClerk is a California corporation with its principal place of business at 1981 North Broadway, Suite 430, Walnut Creek, CA 94596. AutoClerk's agent of service in California is CSC - Lawyers Incorporating Service located at 2710 Gateway Oaks Drive Suite 150N in Sacramento, CA 95833.

3.     Defendant Best Western is an Arizona corporation with its principal place of business at 6201 N. 24th Parkway, Phoenix, AZ 85016. Best Western's agent of service in California is CSC - Lawyers Incorporating Service located at 2710 Gateway Oaks Drive Suite 150N in Sacramento, CA 95833.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because the subject matter of this action arises under the United States Copyright Act of 1976, 17 U.S.C. § 101, *et seq*. ("Copyright Act").  The Court also has supplemental jurisdiction over the state law breach of contract claim pursuant to 28 U.S.C. § 1367.

5.     The Court has personal jurisdiction over Defendants. Defendant AutoClerk is a California corporation with its principal place of business in California.  Defendant Best Western has sufficient minimum contacts with the State of California as a result of its actions and conduct that form the basis of Actian's claims, as well as the harm caused to Actian, and Actian has its principal place of business within the State of California. As alleged further below, a substantial portion of Defendants' infringing acts and breaches occurred within the State of California. Defendants have also made representations and admissions in court filings in a prior action relating to this subject matter that Defendants' actions and conduct underlying this action occurred in California, including AutoClerk's purchase of a license to use copies of Actian's PSQL (later "Zen") line of original copyrighted computer programs (the "Actian Software"), AutoClerk's implementation of the Actian Software into the PMS Application, sales of the PMS Application, and provision of the PMS Application to PMS Customers. Defendants further represented that the contracts underlying this action were entered into and performed in California.  In addition, the v.13 License Agreement (as defined below) contains a venue provision designating the Northern District of California as the exclusive federal court in which venue will lie for all disputes arising out of or relating to that

1    agreement and stating that the parties agree to submit to exclusive jurisdiction and venue of such

2    court.

3         6.      Venue is proper in this District, because Defendants can be found in this district,

4    pursuant to 28 U.S.C. § 1400. Venue is further proper in this District pursuant to 28 U.S.C. §

5    1391(b)(2) because a substantial part of the events or omissions giving rise to claims herein occurred

6    in this District and the injuries alleged herein occurred in this District, including the following: both

7    Actian and Defendant AutoClerk have their principal places of business in the Northern District of

8    California; AutoClerk purchased the licenses to the Actian Software from Lafayette, California and

9    Walnut Creek, California, which are located within the Northern District of California; upon

10   information and belief, AutoClerk installed the Actian Software in these same locations in the

11   Northern District of California; upon information and belief, AutoClerk sold the PMS Application

12   (which included the Actian Software) from these locations in the Northern District of California; and

13   as alleged further below, many of Defendants' infringing acts and breaches occurred within the

14   Northern District of California, including at Best Western hotels within the Northern District of

15   California. The v.13 License Agreement (as defined below) also contains a venue provision

16   designating the Northern District of California as the exclusive federal court in which venue will lie

17   for all disputes arising out of or relating to that agreement. Moreover, in court filings in a prior

18   action relating to this subject matter, Defendants contended that the Northern District of California is

19   the proper venue for this dispute and further represented that Best Western "is willing to send

20   witnesses and evidence to California." *See Actian Corp. v. AutoClerk, Inc. & Best Western Int'l Inc.*,

21   No. 1:25-cv-01291, in the Western District of Texas [Dkt. 11] ("the Court should transfer this case to

22   the Northern District of California."). Alternatively, venue is proper in this District pursuant to 28

23   U.S.C. § 1391(b)(3) because there is no other district in which the action may otherwise be brought

24   under section 1391(b), and Defendants are subject to the Court's personal jurisdiction with respect to

25   this action.

26

27

28

# BACKGROUND

**Actian Software**

7.    Plaintiff Actian is a computer software company whose primary focus is hybrid data management, integration, and analytics.  Actian is renowned for its innovative data management and integration technologies. Actian has an installed base of thousands of customers including large global enterprises, public sector entities, and small to medium enterprises.

8.    Actian is the developer and owner of copyrights in the Actian Software, which is a database management system optimized for embedding in other computer program applications. The Actian Software often is bundled by independent software vendors and original equipment manufacturers.

9.    Pervasive PSQL v.10 and v.11 and Actian Zen v.13 of the Actian Software are the software versions primarily at issue in this dispute, and they are protected under one or more copyright registrations including without limitation United States Copyright Registration Numbers TX0007494553,    TX0007494380,    TX0007494556,    TX0007348174,    TX0007348201, TX0007348199,    TX0007348176,    TX0007494543,    TX0007494545,    TX0008943036, TX0009363805, TX0009365932, and TXu002269422 (the "Actian Copyrights").

**AutoClerk's License of the Actian Software**

10.    Defendant AutoClerk is a software company that provides hotel property management solutions ("PMS Application") for Best Western branded hotels, other chain hotels, independent hotels, and property management companies (collectively "PMS Customers"). Upon information and belief, AutoClerk's PMS Application is used by its PMS Customers to, among other things, manage reservations, check-ins/outs, billing, room cleaning, and other front-desk operations, as well as communicate with hotel guests.  AutoClerk offers PMS Customers subscription-based pricing for its PMS Application and bills its customers on a monthly, quarterly, or annual basis. The Actian Software functions as the database for AutoClerk's software and is a crucial component of AutoClerk's PMS Application. Upon information and belief, AutoClerk's PMS Application cannot operate as intended without the Actian Software.

11.    In August 2008, AutoClerk first licensed the Actian Software from Pervasive

Software, Inc. ("Pervasive"), Actian's predecessor in interest, by purchasing a PSQL v.10 workgroup 1-user license through Pervasive's eCommerce platform. A workgroup license is a license that permits use of the software by a specific number of users and permits the software to be installed on a single system. It is a significantly less expensive option than a server license, which is meant for larger, multi-user environments. Between 2009 and 2019, AutoClerk, and later through its acquisition of AutoClerk, Best Western, purchased additional workgroup licenses to versions 10 (including version 10.3), 11, and 13 of the Actian Software. In all instances, Defendants purchased workgroup licenses for a specific number of users—usually 1-user licenses (and for all versions of the v.10 Actian Software, the licenses were 1-user licenses), but on a few occasions, 3-user licenses and 25 workgroup deployment packs. Under the 25 workgroup deployment packs, Defendants' use continued to be limited to 1-, 3-, and 5-concurrent user limits because of technological limits placed on the software. Defendants also appear to have upgraded certain instances of their software to version 10.3 during this time. Each of these license purchases were memorialized through an invoice, which confirms the type of license purchased (i.e., number of users, that it was a workgroup license, and the specific version of the Actian Software).

12.    In 2013, Actian acquired Pervasive, and all rights from Pervasive's previous software sales were transferred to Actian. Actian continued to operate the Pervasive business and offer the Actian Software under Actian's brand name and overall business organization.

13.    AutoClerk's license to the Actian Software is governed by specific terms and conditions, as outlined in the applicable license agreements and the invoices. With respect to PSQL version 10, there are three versions of the license agreement, and the version that governs depends on the version of the Actian Software that is being installed or upgraded to: for any installations of versions 10.0, the Pervasive PSQL v10 Workgroup Edition License Agreement dated July 6, 2007 (the "v.10-1 License Agreement") applies, for any installations of versions 10.1-10.2, the Pervasive PSQL v10 Workgroup Edition License Agreement dated May 23, 2008 applies (the "v.10-2 License Agreement"), and for any installations of version 10.3, the Pervasive PSQL v10 Workstation or Workgroup Edition License Agreement, dated October 30, 2009 applies (the "v.10-3 License Agreement" and collectively with the v.10-1 License Agreement and the v.10-2 License Agreement,

the "v.10 License Agreements").  With respect to PSQL version 11 and Actian Zen 13, the Pervasive PSQL v11 License Agreement (the "v.11 License Agreement"), and the PSQL v13 License Agreement (the "v.13 License Agreement," and collectively with the v.10 License Agreements, the v.11 License Agreement, and the applicable invoices, the "License Agreements") govern, respectively.  The v.10 License Agreements, v.11 License Agreement, and v.13 License Agreement are attached as Exhibit A.

14.    The v.10 License Agreements, v.11 License Agreement, and v.13 License Agreement are clickwrap agreements that require any individual or entity downloading or installing the Actian Software, including AutoClerk or other users, to affirmatively indicate consent to the terms prior to the downloading and installation of each version of the Actian Software, including any upgrades to a different version of the Actian Software. Specifically, each time a user, including AutoClerk, downloads or installs the applicable Actian Software (including when it upgrades to a different version of the software), it is prompted to read and accept the terms of the applicable license agreement. If the user does not assent to the terms of the license agreement, it can click an option presented to it on the screen that states it does not accept the terms in the license agreement, and it will not be able to proceed further with the download or installation of the Actian Software.  If the user wants to proceed with the download or installation of the software, it is required to click the option stating that it accepts the terms of the license agreement, and it can then proceed with the download or installation. Each license agreement states prominently at the top of the first page that the user (including AutoClerk) should not install the software until it has read the agreement and that by installing the software (or authorizing any person to do so), the user (including AutoClerk) accepts the terms and conditions of the agreement.  By downloading and installing the Actian Software, a user, including AutoClerk, therefore agrees to be bound by the terms of the License Agreements. A copy of the License Agreement applicable to each copy is stored in the files e-installed with the Actian Software. AutoClerk is a software company that is or should be aware that software developers protect their copyrighted works with license agreements such as the ones at issue here.

15.    The v.13 License Agreement contains an exclusive venue provision that requires all

1   disputes arising out of or relating to the v.13 License Agreement to be brought exclusively in the
2   federal courts located in the Northern District of California or in the state courts located in Santa
3   Clara County, California and further states that the parties agree to submit to the exclusive
4   jurisdiction and venue of such courts.

5        16.     The License Agreements establish that copies of the Actian Software were merely
6   licensed to AutoClerk and not sold, and that all intellectual property rights embodied in all such
7   copies remain with Actian (formerly Pervasive).

8        17.     The License Agreements grant AutoClerk a nonexclusive, non-transferable, non-
9   sublicensable right to install and use the Actian Software, subject to certain conditions which restrict
10  the scope of AutoClerk's license and other terms. Any use, reproductions, or distributions beyond the
11  restrictions contained in the License Agreements would exceed the scope of the license and
12  constitute a violation of Actian's intellectual property rights. Defendants have materially breached
13  these conditions and the other provisions contained in the License Agreements.

14       18.     Among the conditions contained in the License Agreements are those that govern how
15  the Actian Software can be used, by how many users, on how many systems, and for what purpose.
16  For version 10 of the PSQL software, by purchasing PSQL v.10 workgroup 1-user licenses, the v.10-
17  1 License Agreement and v.10-2 License Agreement state that subject to the terms of the agreement,
18  AutoClerk is granted the right to reproduce, use, and install the Actian Software on one terminal,
19  which is defined as one device (i.e., in line with the Authorized Copy Limit under the license, which
20  was one). While the v.10-1 and v.10-2 License Agreements state that up to five users may use the
21  software on a terminal at the same time, because AutoClerk purchased 1-user licenses, it was limited
22  to one concurrent user.  The v.10-3 License Agreement states that, subject to the terms and
23  conditions of the agreements, AutoClerk is granted the right to use one copy of the Actian Software
24  on a single terminal, which is defined as one computing system, and permits one concurrent user to
25  simultaneously access and use the Actian Software.

26       19.     If AutoClerk wants more than one user to access or use the Actian Software or wants
27  to be able to reproduce another copy or install the Actian Software on more than one terminal, it is
28  required to purchase different licenses, such as a 3-user or 5-user license, or a server license.

AutoClerk cannot reuse or reproduce additional copies of the Actian Software for a different or additional user, distribute the Actian Software to a different or additional user, or install the Actian Software on a different terminal without obtaining the appropriate type of licenses.

20.    With respect to AutoClerk's license of the v.11 software, the v.11 License Agreement states that, subject to the terms and conditions of the agreement, and if AutoClerk has properly received the software, AutoClerk is granted the right to use a copy of the software on a single server (defined as a single computing system) and permit a total number of concurrent users that is not greater than the license user count to simultaneously access and use the software.

21.    With respect to AutoClerk's license of the v.13 software, the v.13 License Agreement states that, subject to the terms and conditions of the agreement, and if AutoClerk has properly received a copy of the software, AutoClerk is granted the right to use the software on a single server (defined as a single computing system) and permit a total number of concurrent users that is not greater than the user count of five to simultaneously access and use the software.

22.    The v.11 and v.13 License Agreements expressly provide that if AutoClerk "cannot accurately track the number of Concurrent Users accessing the applicable Server Software under a Concurrent User License and maintain appropriate Records in accordance [with the agreement], then [AutoClerk] may not purchase a Concurrent User License."

23.    The License Agreements further condition AutoClerk's license and right to use the Actian Software on AutoClerk's agreement that it will use the Actian Software only for its internal business purposes, and not to host applications for third parties or to provide service bureau, time-sharing, or other computer services to third parties. In other words, AutoClerk's licenses do not permit it to use its PMS Application (which requires the Actian Software) as a hosted application or to provide services to third parties.

24.    The v.13 License Agreement also specifically restricts the scope of AutoClerk's license of the v.13 Actian Software, stating, "[e]xcept with the express written consent of Actian . . . You may not use the [Actian Software] for multiplexing or to permit third-party access to or use of the [Actian Software], or use, access, or allow access to the [Actian Software] in any way to benefit third parties" or "use [the Actian Software] to provide or operate hosting or Application Service

Provider (ASP) services, Software as a Service, service bureau, marketing, training, outsourcing services, or consulting services, or any other commercial service."

25.    Additionally, the License Agreements prohibit the use of "pooling" or "multiplexing," which refers to attempts to use hardware or software to reduce the number of required user licenses by allowing multiple users or terminals/servers/devices to access the software through shared connections, and which prevents an accurate counting of how many users or processes truly are connected to the Actian Software. In other words, the License Agreements prohibit Defendants from allowing multiple users, applications, or devices to connect to the Actian Software through a "middleman" like an application server or connection pool to make it look like there is only one user.

26.    The v.13 License Agreement further makes plain that multiplexing or pooling is excluded and outside the scope of the license to use the Actian Software copies, stating that to engage in these uses, AutoClerk would be required to first purchase a Vx server edition license before engaging in multiplexing or pooling.

27.    The License Agreements further restrict the scope of AutoClerk's rights to use licensed copies of the Actian Software by prohibiting AutoClerk from using, renting, leasing, sublicensing, transferring, copying, reproducing, displaying, modifying, creating derivative works of, time sharing, or disposing of the Actian Software except as expressly authorized by the License Agreements.

28.    The License Agreements expressly prohibit AutoClerk from assigning or transferring any rights, obligations, or interests in the Software, in whole or in part, without the prior written consent of Actian. The License Agreements further state that any attempted assignment without Actian's consent is void. They also specify that "a merger or other acquisition by a third party will be treated as an assignment," or, in the case of the v.13 License Agreement, that "[a]ny purported assignment, including in case of a merger, acquisition or change of control or purchase of more than fifty percent of Your assets . . . is void."

29.    The License Agreements also require AutoClerk to ensure that the number of users accessing the Actian Software does not exceed the permissible user count (or copy limit) and require AutoClerk to maintain sufficient records to document that AutoClerk's use of the Software is in

accordance with the terms of the License Agreements.  Actian has the right to audit such records.

30.    The License Agreements state that they will terminate immediately if AutoClerk fails to comply with or breaches any of their terms, but certain sections will survive termination.

**Best Western's Acquisition of AutoClerk**

31.    In mid- to late-2024, Actian learned that Best Western had acquired AutoClerk. AutoClerk is now a wholly owned subsidiary of Best Western. It appears that at least one of the license purchases may have occurred after this acquisition.  The ensuing purported assignment of AutoClerk's license rights, violated the License Agreements, which prohibit AutoClerk from assigning or transferring its rights in the Actian Software without Actian's prior written consent, including through a merger or other acquisition by a third party, which constitutes an assignment under the License Agreements.

32.    Actian has since learned that Best Western described the acquisition of AutoClerk as a strategic move to enhance its technological and distribution capabilities and streamline its hotel operations. Upon information and belief, Best Western wanted to create a unified inventory system by merging its central reservation system (CRS) with AutoClerk's property management system (PMS) to have a single shared database to manage information more smoothly.

33.    In public statements that Actian has reviewed, Best Western claimed the acquisition of the PMS Application would allow it to implement technology to better assist Best Western branded hotels by, among other things, providing more effective guest services, simplifying management of hotel rates and reservations, and increasing revenue.  For example, Best Western claimed, "the PMS was worth acquiring – it gives us a level of control so we can make sure that we are providing features and functionalities our hotels expect and deserve." Best Western claimed that AutoClerk's customers that were not associated with Best Western would also benefit from the acquisition, and plans existed to provide connectivity solutions and integration capabilities regardless of brand affiliation.  Defendants claim the PMS Application can seamlessly integrate with the existing software services used by chain or independent hotel owners.

34.    Defendants promote the PMS Application as the official PMS for Best Western branded hotels in North America. According to AutoClerk's website, "Best Western strongly

recommends all its properties in North America switch to AutoClerk to ensure seamless integration with the brand's Profit Platform, and to create a more consistent guest experience." It further states that "Best Western suggests you act fast to secure your AutoClerk onboarding slot." While potentially not mandatory for all Best Western Hotels, the website states, "all new PMS installations should be AutoClerk," and "existing hotels are required to switch to AutoClerk only if they are changing their PMS." AutoClerk also represents that it offers a "special simple price" for Best Western hotels.

**Defendants' Infringing Conduct and Violations of the License Agreements**

35.    Despite the assignment being void under the terms of the License Agreements, Actian attempted to work with the Defendants to determine the nature and extent of their use of the Actian Software in late 2024 and early 2025 after it learned of the assignment, so that it could determine whether AutoClerk was complying with its licensing obligations and determine what licenses Best Western would need to acquire. In connection therewith, Actian sought to enforce its audit rights under the License Agreements.

36.    Prior to its audit, Actian did not know and had no way of knowing the extent and nature of Defendants' misuse of the Actian Software. While Actian is able to track certain events— such as when AutoClerk upgraded to v.10.3 of the Actian Software, for example—through its Electronic Licensing Server, it is not able to track in all instances how many copies or distributions are made, how many users are utilizing the Actian Software, or how many terminals or computing systems copies of the Actian Software have been reproduced and installed on. Nor does Actian have the means, other than by conducting an audit, to monitor or track its licensees' use where it has no reason to believe that misuse is occurring. Actian relies on its licensees, including Defendants, to accurately track and report their use and compliance with their license agreements, as they are required to do under those agreements.

37.    Actian's audit aimed to review, among other things, how AutoClerk purchased the Actian Software, how the Actian Software was integrated in the PMS Application, how and to whom Defendants distributed the Actian Software, how many copies of the Actian Software had been made, how many users Defendants had distributed the Actian Software to, and how many users had

access to and use of the Actian Software. During this process, Actian requested a list of properties where the Actian Software had been installed by Defendants' PMS Customers, along with details on the licenses, including key numbers and versions of the deployed software.

38.     In late 2024, Defendants initially cooperated with Actian's audit. At the time, Best Western indicated that the audit discussions should go through Best Western. Kevin Velez, the Managing Director for Technology Management at Best Western, and Vojtek "VK" Karpuk, Corporate Counsel and Managing Director, Legal, at Best Western, communicated with Actian. Mr. Karpuk indicated he was communicating on behalf of Best Western and provided information about the use, reproduction, and distribution of copies of the Actian Software, including distribution to and use of the Actian Software by Defendants' customers. Defendants, through Best Western, identified names and addresses for 135 Best Western branded hotels, other chain hotels, and independent hotels where versions 10, 11, and 13 of the Actian Software currently are being used. Among these hotels are approximately 75 hotels, including Best Western hotels, located within the State of California, meaning over half of the locations Defendants identified where they are improperly using the Actian Software are located within the State of California, and more than 40 of these hotels, including Best Western hotels, appear to be located within the Northern District of California.

39.     However, Defendants ultimately stopped participating in the audit by failing to provide the requested records and/or by providing incomplete information. Defendants' failure to comply with the audit—which independently violated the License Agreements—has prevented Actian from determining the full extent to which Defendants have infringed on Actian's copyrights in the Actian Software and violated the terms of the License Agreements.

40.     Despite Defendants' failure to fully cooperate with the audit, Actian discovered that AutoClerk, and by extension, including through its acquisition, Best Western, have used, reproduced, and distributed and continue to use, reproduce, and distribute the Actian Software in violation of Actian's exclusive copyrights and beyond the scope of the restrictions and other terms contained in the License Agreements.

41.     Defendants have engaged in a systematic pattern of willful unlicensed use, reproduction, and distribution of the Actian Software. As just one example, Defendants reused one

ORIGINAL COMPLAINT

PSQL v.10 workgroup 1-user license—the use of which was limited to one user on one machine—at least *696* times by using the license key to install the Actian Software at and distribute it to different hotels, including at Best Western branded hotels, across the country, including in California. Based on Actian's records, over 300 of these unlawful distributions, installations, and uses occurred at locations within the State of California, and more than 150 appear to have occurred at locations, including at Best Western hotels, within the Northern District of California. Based on this, it appears that Defendants allow and encourage their PMS Customers (including hotels, independent hotels, and property managers) to install and rely on a single license to the Actian Software to manage hundreds of properties. Defendants' unlawful and unlicensed reproduction, distribution, and use of the Actian Software infringed on Actian's copyrights. Before Actian's audit, Actian was not aware of this unlicensed use of the Actian Software.

42.    Defendants otherwise have improperly reproduced, distributed, and used the Actian Software beyond the scope of the License Agreements through their deployment of the Actian Software in conjunction with their PMS Application. The PMS Application is an application intended for use and access by third parties and provides computer services to Defendants' third-party PMS Customers, as well as the PMS Customers' end users (i.e., hotel guests, staff, management, etc.), and is not limited to Defendants' internal use, all of which is prohibited by the restrictions contained in the License Agreements. As just one example, AutoClerk's website states that, with the PMS Application, PMS Customers "can connect with or continue using many existing central reservation systems, including SynXis/Sabre, Siteminder, Windsurfer, Travel Trippe, and Sceptre," and "We'll help you connect with commonly used distribution channels like Booking.com and Expedia.com." Its website further states that guests and staff can chat over a simple text messaging interface through the PMS Application. Defendants therefore are marketing and promoting AutoClerk's PMS as part of a broader connected system that third parties can use, not limited to internal use. This type of deployment of the Actian Software constitutes a material breach of the conditions, and exploitation outside of the scope of any license granted, in the License Agreements which prohibit using the Actian Software, and by extension, the PMS Application in which the Actian Software is integrated, to benefit or provide services to third parties.

43.    Upon information and belief, Defendants also permit many concurrent users to simultaneously access and use the Actian Software through the PMS Application, as there do not appear to be any limits placed by Defendants on the number of users that are permitted to access and use the PMS Application at any given time.  Defendants further permit the PMS Application, and by extension, the Actian Software, to be copied and installed on many different terminals and computing systems using a single license.

44.    Defendants also engage in multiplexing or pooling in several ways to reduce the number of devices and users visible to Actian and conceal actual usage, reproduction, and distribution. During the audit process, Defendants, through Best Western, provided Actian documents relating to the PMS Application that alerted Actian to the fact that they are engaged in multiplexing, in violation of the restrictions contained in the License Agreements, by permitting multiple terminals/computing systems to connect with one another and rely on a singular license of the Actian Software and thereby permit access to and use of the Actian Software by more terminals/systems and users than the licenses allow. For example, at any one hotel, Defendants appear to provide the architecture that enables their PMS Customers to push queries to a single installed copy of the Actian Software from multiple terminals and computing systems using one licensed user, which constitutes multiplexing. Such a deployment of the Actian Software is outside the scope of the licenses and therefore constitutes infringing conduct, including by the PMS Customers that engage in such use. Upon information and belief, Defendants also encourage and allow their PMS Customers to engage in remote multiplexing, which consists of multiplexing performed over the internet across different locations and constitutes unlicensed use.

45.    Through these actions, Defendants have violated and exceeded numerous restrictions on the scope of the license contained in the License Agreements, including those that (i) permit one copy of the Actian Software to be used only on a single terminal or server, as applicable; (ii) limit the number of concurrent users that may simultaneously access and use the Actian Software to the user count associated with the license; (iii) prohibit multiplexing and pooling, including to reduce the user and terminal/server count reported; (iv) prohibit use of the Actian Software to host applications for third parties or to provide computer services to third parties; (v) require that the

Actian Software be used only for internal business purposes; and (vi) otherwise prohibit the use, reproduction, or distribution of the Actian Software except as expressly authorized by the License Agreements.

46.    Because the License Agreements expressly condition the grant of the limited license to the Actian Software on compliance with the specific license restrictions, Defendants' violations nullified the limited license grant, rendering all of Defendants' subsequent usage unlicensed and infringing.  In fact, the License Agreements specify that they will terminate immediately without notice if the licensee fails to comply with their terms and require that all copies of the Actian Software be destroyed and/or returned upon termination (although some provisions survive termination), meaning most of Defendants' usage was unlicensed and infringing. The PMS Customers' usage of and access to the Actian Software (as included in the PMS Application) also was unlicensed and infringing.

47.    Moreover, to the extent the assignment from AutoClerk to Best Western was void, Best Western has no (and never has had any) license to the Actian Software, and all its access to and use of the Actian Software was therefore unlicensed and infringing.

48.    AutoClerk, and through the purported assignment, Best Western, also have committed material breaches of other terms of the License Agreements, including without limitation by failing to take steps to prevent the unauthorized reproduction, distribution, redistribution, and/or use of the Actian Software, failing to track concurrent users or the number of terminals or systems that utilize the Actian Software as required, failing to comply with their audit obligations, assigning the License Agreements without Actian's consent, and otherwise failing to comply with any of the covenants contained in the License Agreements.

49.    Defendants' actions have been willful and intentional, and/or in disregard of or with indifference to Actian's rights. Despite knowing that they are improperly using the Actian Software beyond the rights granted in the License Agreements, Defendants have taken no meaningful action to suspend the ongoing copyright infringement, including the ongoing infringement of the PMS Customers. On the contrary, Defendants' statements and actions encourage and promote the use of the Actian Software in a manner that infringes on Actian's Copyrights and violates the License

Agreements.

50.    The extent to which the Defendants have infringed the Actian Copyrights and breached the License Agreements is within their knowledge and control, and there may therefore be additional infringing conduct and breaches of which Actian has yet to learn. Defendants have refused to provide Actian with basic information about their use, reproduction, and distribution of the Actian Software, despite their express obligations in the License Agreements to provide such information and despite Actian's repeated requests.

51.    Actian diligently attempted to resolve the issue of Defendants' breaches and copyright violations, unlicensed uses, reproductions, distributions, and redistributions by discussing proposals with Defendants to resolve the matter amicably. Those discussions failed, necessitating this action.

## COUNT I

## COPYRIGHT INFRINGEMENT

52.    Actian restates and incorporates by reference the allegations in the preceding paragraphs.

53.    Actian is the owner of the Actian Copyrights, which are valid and registered copyrights in the Actian Software.

54.    Defendants are liable for direct infringement of the Actian Copyrights by using, reproducing, and distributing substantial portions or entire copies of the Actian Software in violation of the material conditions in the License Agreements, beyond the scope of the license rights granted in the License Agreements, without the requisite licenses necessary for the type of uses, reproductions, and distributions in which they have engaged and continue to engage, without any license, and/or after termination of their license rights.

55.    Defendants' conduct is willful and intentional, and/or in disregard of or with indifference to Actian's rights.

56.    As a direct and proximate result of Defendants' wrongful conduct, Actian is entitled to damages in an amount to be proven at trial.  Such damages include but are not limited to Actian's actual damages and Defendants' profits attributable to infringement, or in the alternative, statutory damages, including for willful and intentional infringement.  Actian is further entitled to attorneys'

fees, expert fees, and other costs and expenses as set forth in 17 U.S.C. § 505 and under other relevant law.

57.     Actian is further entitled to injunctive relief against further acts of infringement.

## COUNT II

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

58.     Actian restates and incorporates by reference the allegations in the preceding paragraphs.

59.     Actian is the owner of the Actian Copyrights, which are valid and registered copyrights in the Actian Software.

60.     The Copyright Act imposes liability not only on those that directly infringe copyrights, but also on those that induce or contribute to such infringement.

61.     Defendants are contributorily liable for the direct copyright infringement of the PMS Customers. By promoting, marketing, encouraging, enabling and/or otherwise substantially participating in the infringing sale, use, reproduction, and distribution of the PMS Application that includes or requires inclusion of copies of the Actian Software, Defendants have induced and/or materially contributed to the PMS Customers' ongoing acts of infringement of the Actian Copyrights. Defendants' contributory infringement is knowing and intentional, since they know that operating their PMS Application requires installing and using the Actian Software, and furthermore because Actian repeatedly informed Defendants of the nature of that infringement during the audit discussions.

62.     Best Western also is contributorily liable for the direct copyright infringement of AutoClerk. By promoting, marketing, encouraging, enabling and/or otherwise substantially participating in the sale, use, reproduction, and distribution of the PMS Application that includes or requires inclusion of copies of the Actian Software, Best Western has induced and/or materially contributed to AutoClerk's ongoing acts of infringement of the Actian Copyright. Best Western's contributory infringement is knowing and intentional, since it knows that operating the PMS Application requires installing and using the Actian Software, and furthermore because Actian repeatedly informed Best Western of the nature of that infringement during the audit discussions.

63.     Defendants' conduct is willful and intentional, and/or in disregard of or with indifference to Actian's rights.

64.     As a direct and proximate result of Defendants' contributory copyright infringement, Actian is entitled to damages in an amount to be proven at trial.  Such damages include but are not limited to Actian's actual damages and Defendants' profits attributable to infringement, or in the alternative, statutory damages, including for willful and intentional infringement. Actian is further entitled to attorneys' fees, expert fees, and other costs and expenses as set forth in 17 U.S.C. § 505 and other relevant law.

65.     Actian is further entitled to injunctive relief against further acts of infringement.

## COUNT III

## VICARIOUS COPYRIGHT INFRINGEMENT

66.     Actian restates and incorporates by reference the allegations in the preceding paragraphs.

67.     Actian is the owner of the Actian Copyrights, which are valid and registered copyrights in the Actian Software.

68.     Defendants are vicariously liable for the direct copyright infringement of the PMS Customers. Defendants had the right and ability to supervise or control the infringing activity of the PMS Customers. Defendants refused to exercise their supervision and control to stop or limit the infringement, even though they could have done so. For example, Defendants could have prevented their PMS Customers from engaging in multiplexing by, among other things, not providing the architecture that enabled them to multiplex, and they could have placed limits on the usage, reproductions, and distributions in which the PMS Customers were permitted to engage. Defendants did not do so. Defendants have derived a direct financial benefit from the infringing activity through sales of the PMS Application, which includes or requires inclusion of copies of the Actian Software.

69.     Best Western also is vicariously liable for the direct copyright infringement of AutoClerk, its wholly owned subsidiary. Best Western was aware that the PMS Application was being marketed and sold to the PMS Customers. Best Western has the right and ability to supervise or control AutoClerk's infringing activity. Best Western refused to exercise its supervision and

control to stop or limit AutoClerk's infringement, even though it could have done so. For example, as AutoClerk's parent company, Best Western could implement controls and limits on the deployment of the PMS Application. Instead, Best Western promotes, encourages, enables, and markets further unauthorized and infringing uses, reproductions, and distributions of the Actian Software within the PMS Application. As AutoClerk's parent company, Best Western has a direct financial interest in AutoClerk's infringing activity and derives a direct financial benefit from the infringing activity through sales of the PMS Application, which includes or requires inclusion of copies of the Actian Software. Best Western itself has emphasized that acquiring the PMS Application would lead to increased revenue.

70.     Defendants' conduct is willful and intentional, and/or in disregard of or with indifference to Actian's rights.

71.     As a direct and proximate result of Defendants' vicarious copyright infringement, Actian is entitled to damages in an amount to be proven at trial. Such damages include but are not limited to Actian's actual damages and Defendants' profits attributable to infringement, or in the alternative, statutory damages, including for willful and intentional infringement. Actian is further entitled to attorneys' fees, expert fees, and other costs and expenses as set forth in 17 U.S.C. § 505 and other relevant law.

72.     Actian is further entitled to injunctive relief against further acts of infringement.

## COUNT IV

## BREACH OF CONTRACT

73.     Actian restates and incorporates by reference the allegations in the preceding paragraphs.

74.     A contract exists between Actian and AutoClerk, and, to the extent the assignment was valid, Actian and Best Western, as embodied in the License Agreements, for use of the Actian Software. Actian has fully performed under the terms of the License Agreements and continues to perform.

75.     Defendants materially breached the License Agreements, including through the following conduct: (1) failing to take steps to prevent the unauthorized reproduction, distribution,

and/or use of the Actian Software; (2) failing to track concurrent users as required; (3) failing to comply with and appropriately respond to Actian's audit requests related to inspecting Defendants' records to verify compliance with the License Agreements and determine amounts due under the agreements; (4) attempting to assign rights in the Actian Software to Best Western without Actian's prior written consent, violating the License Agreements; and (5) failing to comply with any other covenants contained in the License Agreements.

76.     The foregoing breaches are ongoing.

77.     As a direct and proximate cause of Defendants' breaches, Actian suffered and continues to suffer harm and damages, including without limitation, lost licensing revenue and lost fees.

78.     Actian is entitled to damages for the breaches, including without limitation, actual and compensatory damages, indirect damages, and consequential damages.

79.     In addition to the foregoing damages, Actian is entitled to the recovery of reasonable attorneys' fees, expert fees, and all other related costs and expenses, including pursuant to applicable state law.

80.     All conditions precedent to Actian's recovery have been performed or have occurred or have otherwise been waived.

81.     Actian is also entitled to specific performance, including matters regarding Defendants' audit obligations. Actian is further entitled to injunctive relief.

## **PRAYER FOR RELIEF**

Wherefore, in consideration of the foregoing, Plaintiff prays for judgment against Defendants as follows:

1.     An order finding that Defendants are liable for copyright infringement;

2.     An order finding that Defendants are liable for contributory copyright infringement;

3.     An order finding that Defendants are liable for vicarious copyright infringement;

4.     An order finding that Defendants are liable for breach of contract;

ORIGINAL COMPLAINT

5.  For actual damages and Defendants' profits for copyright infringement under 17 U.S.C. § 504(b), or alternatively, for statutory damages for copyright infringement under 17 U.S.C. § 504(c), including an award of enhanced damages under 17 U.S.C. § 504(c)(2);

6.  For Actian's attorneys' fees, expert fees, and other costs and expenses, as set forth in the copyright statute, 17 U.S.C. § 505, and/or under other relevant law, including applicable state law.

7.  For injunctive relief, including pursuant to 17 U.S.C. § 502, against Defendants and their agents, franchisees, end users, and any other related individuals or entities' continued breaches of the Agreement and/or continued acts of copyright infringement;

8.  For an order requiring Defendants and their PMS Customers, agents, end users, and any other related individuals or entities who may be using Actian's Software in an unauthorized manner to cease and desist from all unauthorized use, distribution, or reproduction of the Actian Software;

9.  For damages for breach of contract in an amount to be proven at trial, including for actual and compensatory damages, indirect damages, and consequential damages;

10.  For specific performance, including in regard to Defendants' audit obligations;

11.  For pre- and post-judgment interest on all damages awarded at the maximum allowable rate; and

12.  For all such other and further relief as the Court deems just and proper.

ORIGINAL COMPLAINT

1

## JURY TRIAL DEMANDED

2          Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury

3    of any issues so triable by right.

4

5    Dated:  October 23, 2025                    **HATCH LAW, PC**

6

7                                                By:     _/s/ Ryan E. Hatch_
                                                         RYAN E. HATCH

8

9                                                **REEVES & BRIGHTWELL LLP**
                                                 MANASI RODGERS
10                                               (*Pro Hac Vice Application Forthcoming*)

11                                               **Attorneys for Plaintiff**
                                                 **Actian Corporation**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORIGINAL COMPLAINT