UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ACTIAN CORPORATION,

Plaintiff,

v.

AUTOCLERK, INC., et al.,

Defendants.

Case No. 25-cv-09136-WHO

**ORDER ON THE MOTION TO DISMISS**

Re: Dkt. No. 19

Before me is a motion to dismiss for failure to state a claim brought by defendants AutoClerk, Inc. ("AutoClerk") and Best Western International, Inc. ("Best Western") (together, "defendants"). They principally contend that plaintiff Actian Corporation ("Actian") has raised only claims that sound in contract and not, as Actian has pleaded, in copyright law. They assert that because Actian has failed to plead a federal claim, I lack jurisdiction. Their motion lacks merit: Actian has adequately alleged copyright claims asserting violations of 17 U.S.C. § 505 as well as a breach of contract claim over which I may exercise supplemental jurisdiction. The motion to dismiss is DENIED.

**BACKGROUND**

Actian is a computer software company focused on data management and technology integration. Complaint ("Compl.") [Dkt. No. 1] ¶ 7. It developed and owns the copyright for "Actian Software," a "database management system" that companies can embed in other computer programs to support with data management within those companies' systems. Compl. ¶ 8. It has created a number of versions of the Actian Software: at issue here are (1) Pervasive PSQL v.10 ("v.10"); (2) Pervasive PSQL v.11 ("v.11"); and (3) Actian Zen v.13 ("v.13). Compl. ¶ 9. Actian regularly licenses Actian Software to other companies. Compl. ¶ 7.

AutoClerk is a software company that specializes in providing property management

United States District Court
Northern District of California

solutions to hotel chains, including to Best Western hotels.  Compl.  ¶ 10.  Its software supports its customers in managing "reservations, check-ins/outs, billing, room cleaning, and other front-desk operations, as well as communicat[ions] with hotel guests."  *Id.*  It has licensed Actian Software (including v.10, v.11, and v.13) since August 2008; its own property management software cannot operate without the Actian Software database management system.  Compl. ¶¶ 10–11.

**The Actian Software Licenses**

Each version of the Actian Software is associated with corresponding versions of at least one Actian Software License Agreement.  Compl. ¶ 13.  While v.10 has three corresponding license agreements (the v.10-1 License Agreement, the v.10-2 License Agreement, and the v.10-3 License Agreement), v.11 and v.13 each have only one (the v.11 License Agreement and the v.13 License Agreement) (together, I will refer to the license agreements as "the License Agreements"). *Id.*  When attempting to download, install, and use the Actian Software, a user must acknowledge a clickwrap agreement that requires anyone downloading the Actian Software to affirmatively consent to the terms of the License Agreements.  Compl. ¶ 14.

Upon opening any of the License Agreements, a reader is presented with one of the following three admonitions:

> IMPORTANT: DO NOT INSTALL THE ENCLOSED SOFTWARE UNTIL YOU HAVE READ THIS LICENSE AGREEMENT ("AGREEMENT").  BY INSTALLING THE SOFTWARE, OR AUTHORIZING ANY OTHER PERSON TO DO SO, YOU, AND SUCH OTHER PERSON, IF APPLICABLE, ACCEPT THE TERMS AND CONDITIONS OF THIS LICENSE AGREEMENT.  IF YOU DO NOT AGREE TO THE TERMS OF THIS LICENSE AGREEMENT, THEN RETURN THE ENTIRE PACKAGE WITHIN TEN DAYS OF PURCHASE FOR A REFUND.

Compl. Exh. A (v.10-1 License Agreement, v. 10-2 License Agreement) Dkt. No. 1-1 at 2, 10.

> IMPORTANT: DO NOT INSTALL THE ENCLOSED OR DOWNLOADED SOFTWARE UNTIL YOU HAVE READ THIS PERVASIVE PSQL LICENSE AGREEMENT ("AGREEMENT").  BY INSTALLING THE SOFTWARE, OR AUTHORIZING ANY OTHER PERSON TO DO SO, YOU, AND SUCH OTHER PERSON, IF APPLICABLE, ACCEPT THE TERMS AND CONDITIONS OF THIS AGREEMENT.  IF YOU DO NOT AGREE TO THE TERMS OF THIS AGREEMENT, DO NOT INSTALL OR USE THE SOFTWARE AND WITH RESPECT TO SOFTWARE DELIVERED (I) ON PHYSICAL MEDIA, RETURN THE ENTIRE PACKAGE WITHIN TEN DAYS OF PURCHASE FOR A REFUND, (II) ELECTRONICALLY, DESTROY ANY DOWNLOADED FILES.

2

Compl. Exh. A (v.10-3 License Agreement, v.11 License Agreement) Dkt. No. 1-1 at 18, 26.

PLEASE READ THIS AGREEMENT CAREFULLY BEFORE DOWNLOADING OR INSTALLING THE SOFTWARE.

This Customer License and Support Services Agreement ("Agreement") is a legal agreement between the end user downloading or installing the software . . . and Actian Corporation . . . . IF YOU ARE ENTERING INTO THIS AGREEMENT ON BEHALF OF A COMPANY OR AN ENTITY, YOU REPRESENT THAT YOU ARE THE EMPLOYEE OR AGENT OF SUCH COMPANY OR ENTITY AND YOU HAVE THE AUTHORITY TO ENTER INTO THIS AGREEMENT AND LEGALLY BIND YOUR COMPANY OR ENTITY. . . . BY DOWNLOADING, INSTALLING OR USING THE SOFTWARE OR BY CLICKING THE "I ACCEPT" BUTTON BELOW (OR TYPING "Y" OR "YES" IF YOU ARE INSTEAD ASKED FOR A "Y OR N" RESPONSE), YOU ARE AGREEING TO BE BOUND BY THIS AGREEMENT. IF YOU DO NOT ACCEPT THE TERMS OF THIS AGREEMENT, THEN YOU MUST CLICK ON THE "DECLINE" OR "I DO NOT ACCEPT" BUTTON BELOW (OR TYPE "N" OR "NO" IF YOU ARE INSTEAD ASKED FOR A "Y OR N" RESPONSE) AND YOU MAY NOT DOWNLOAD, INSTALL OR USE THE SOFTWARE. This Agreement governs the purchase and use of the software and services described in an Order (defined below). . . .

Compl. Exh. A (v.13 License Agreement) Dkt. No. 1-1 at 33.

The License Agreements provide a user "a nonexclusive, non-transferable, non-sublicensable right to install and use the Actian Software." They restrict a user from reproducing the Actian Software at all and from distributing the software outside the scope of the specific License Agreement in any way. Compl. ¶ 17. For example, the v.10-1 and v.10-2 License Agreements permit a user to install the Actian Software on one computer with up to five users. Compl. ¶ 18. The v.10-3 License Agreement allows a user to download one copy of the Actian Software on a single computer with one user at a time. *Id.* The v.11 and v.13 License Agreements contain similar restrictions. Compl. ¶¶ 20–21. Companies seeking access to higher user levels or to use the Actian Software on a greater number of computers must buy different types of licenses (e.g., a 3-user license or a server license). Compl. ¶ 19.

The License Agreements include a number of other restrictions. A user has a right to use the Actian Software only insofar as it furthers its own internal business—not in conjunction with any user's service to third parties. Compl. ¶ 23. Third parties are not permitted to access or use

3

the Actian Software unless they purchase it for their own use. Compl. ¶ 24. Users are prohibited from "pooling" or "multiplexing," which is a process that artificially reduces the known number of users accessing the Actian Software by means of a shared network: this allows any amount of users to access the Actian Software at one time but only officially logs one user at a time. Compl. ¶ 25. Users are finally prohibited from "using, renting, leasing, sublicensing, transferring, copying, reproducing, displaying, modifying, creating derivative works of, time sharing, disposing" or "assigning[/]transferring any rights, obligations or interests" in the Actian Software without express authorization from Actian. Compl. ¶¶ 27–28.

Doing any of the aforementioned acts voids the License Agreements. Compl. ¶ 28. Users are required to manage their own use of the Actian Software to ensure it is aligned with the requirements of the License Agreements, although Actian maintains the right to audit user conduct as it relates to the Actian Software. Compl. ¶¶ 29, 35. If a user fails to comply with the enumerated requirements, the License Agreement will terminate immediately. Compl. ¶ 30.

**Defendants' Alleged Infringing Activities**

Actian learned that Best Western acquired AutoClerk in 2024. Compl. ¶ 31. AutoClerk assigned its Actian Software license rights to Best Western as a result of that acquisition without Actian's consent, in violation of the License Agreements. *Id.* Actian alleges that Best Western's AutoClerk acquisition was a concerted effort to access and use the Actian Software to improve Best Western's control over and effective implementation of its hotel operations. Compl. ¶ 33. Best Western now mandates each of its hotels to use AutoClerk as its exclusive property management solutions software. Compl. ¶ 34.

In late 2024 and early 2025, Actian reached out to defendants and enforced its audit rights pursuant to the License Agreements. Compl. ¶ 35. Actian tried working with defendants to determine to what extent AutoClerk had run afoul of the License Agreements and what licenses Best Western would need moving forward. *Id.* Defendants worked with Actian on the audit for

4

some indeterminate amount of time and identified 135 Best Western hotels using the v.10, v.11, and v.13 Actian Software.  Compl. ¶ 38.

Communications ultimately broke down and defendants began to refuse providing the information Actian requested.  Compl. ¶ 39.  Nevertheless, Actian discovered that defendants had repeatedly reproduced and distributed the Actian Software in violation of the License Agreements.  Compl. ¶ 40.  Defendants did so in multiple ways.  For example, Actian discovered that defendants copied and reused one v.10, 1-user license (limited to one user, one machine) at least 696 times—reproducing the Actian Software so that hundreds of Best Western hotels could benefit from a single Actian Software license.  Compl. ¶ 41.  Defendants have also used the Actian Software alongside their own property management solutions application used by third parties and have provided services to third parties using the Actian Software.  Compl. ¶ 42.  Further, defendants have been "multiplexing" or "pooling" to conceal the actual number of users for each of the Actian Software licenses they have purchased.  Compl. ¶ 44.  Defendants multiplex both at individual hotel sites (using multiple computers for one licensed user) and remotely with the support of an internet connection.  *Id.*

Actian contends that these uses of the Actian Software were unlicensed and infringing.  The uses not only went beyond the scope of the License Agreements but were the result of willful and intentional "unauthorized reproduction, distribution, redistribution, and/or use of the Actian Software."  Compl. ¶¶ 48–49.

**Procedural History**

Actian filed its lawsuit on October 23, 2025, alleging four causes of action against defendants: (1) Copyright Infringement in violation of 17 U.S.C. § 505, Compl. ¶¶ 52–57; (2) Contributory Copyright Infringement in violation of 17 U.S.C. § 505, Compl. ¶¶ 58–65; (3) Vicarious Copyright Infringement in violation of 17 U.S.C. § 505, Compl. ¶¶ 66–72; and (4) Common Law Breach of Contract, Compl. ¶¶ 73–81.  Actian seeks injunctive and declaratory

United States District Court
Northern District of California

5

relief, as well as actual, statutory, and enhanced damages.

Defendants filed their motion to dismiss the complaint on January 5, 2026.  Motion to Dismiss ("Mot.") [Dkt. No. 19].  Actian opposed the motion and defendants replied.  *See* Opposition to the Motion to Dismiss ("Oppo.") [Dkt. No. 31]; Reply ISO Motion to Dismiss ("Reply") [Dkt. No. 32].  I held a hearing on the motion on April 8, 2026.

## LEGAL STANDARD

### I.   Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## II.    Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citation omitted). Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003)).

United States District Court
Northern District of California

7

**DISCUSSION**

## I.  Copyright Infringement Claims

Defendants contend that Actian's claims for copyright infringement fail because its first cause of action (and therefore, the derivative copyright claims brought under causes of action two and three) sounds fully in contract law and not under the Copyright Act.  Mot. 10–12; Reply 2–4. Actian recognizes that "it is true that a copyright holder who has granted a license ordinarily waives its right to sue for copyright infringement," but argues that "a copyright claim is nonetheless proper when the defendant's actions exceed the scope of the license."  Oppo. 4–5. The heart of the dispute is whether Actian alleges breaches of mere contractual covenants contained within the meaning of the License Agreements or breaches of conditions of the License Agreements themselves.  *See Ticketmaster L.L.C. v. Prestige Ent., Inc.*, 306 F.Supp.3d 1164, 1172 (C.D. Cal. 2018) ("Breaches of conditions constitute copyright infringement, while breaches of covenants are only actionable under contract law.").

Defendants argue that the following of Actian's allegations state only breaches of covenant:

- AutoClerk has allowed more than one user on a single machine for v.10 Actian Software and has provided it to third parties.
- AutoClerk marketed products containing Actian Software beyond internal use and beyond permitted concurrent users.
- Best Western's acquisition of AutoClerk violated the prohibition on assigning AutoClerk's rights under the License Agreements.

Mot. 11.  Actian, on the other hand, views these and other allegations as breaches of conditions in violation of the Copyright Act.

The Ninth Circuit has addressed the somewhat murky distinction between the two in *MDY Industries, LLC v. Blizzard Entertainment, Inc.*  629 F.3d 928, 939–942 (9th Cir. 2010).  In *MDY*, plaintiff MDY Industries, LLC ("MDY") developed a software program that allowed users to automatically play portions of an online computer game called World of Warcraft ("WoW"), created by defendant Blizzard Entertainment, Inc. ("Blizzard").  *Id.* at 934–35.  WoW players must read and accept both a license agreement and a Terms of Use before downloading or playing the game.  *Id.*  Those terms prohibited the use of software "bots," including the type of software

designed by MDY. *Id.* at 936. MDY's software program did "not alter or copy WoW's game client software, [did] not allow a player to avoid paying monthly subscription dues to Blizzard, and ha[d] no commercial use independent of WoW." *Id.* at 935.

MDY filed an action for declaratory relief to determine, in relevant part, whether its software program infringed Blizzard's copyright rights. *Id.* at 935. The district court decided in favor of Blizzard, concluding that MDY's software "contributorily and vicariously infringed Blizzard's copyrights," and MDY appealed. *Id.* at 937. The Ninth Circuit reversed. *Id.* at 941–42.

In reaching its holding, the Ninth Circuit reviewed the state and scope of copyright law and differentiated "contractual covenants" from "license conditions." *Id.* at 939–942. "We refer to contractual terms that limit a license's scope as 'conditions,' the breach of which constitute copyright infringement. We refer to all other license terms as 'covenants,' the breach of which is actionable only under contract law." *Id.* at 939. Further, courts "distinguish between conditions and covenants according to state contract law, to the extent consistent with federal copyright law and policy." *Id.* Under California law, "[a] covenant is a promise to do or refrain from doing a specific act. A condition is a qualification to the parties' obligations; if it occurs, the interest is terminated or enlarged. A condition is created by the mutual assent of the parties and is binding on both, while a covenant is binding on the covenantor only." *San Mateo Cmty. College Dist. v. Half Moon Bay Lt. P'ship.*, 65 Cal. App. 4th 401, 411 (1998).

Here, the License Agreements present a mixture of covenants and conditions. For example, defendants' alleged acts of allowing more than one user to access a specific license is a breach of a "promise to do or refrain from doing a specific act." *Id.* But defendants' alleged practice of mass copying and redistributing the licensed software goes beyond the scope of the License Agreements.

"[F]or a licensee's violation of a contract to constitute copyright infringement, there must be a nexus between the condition and the licensor's exclusive rights or copyright." *MDY Indus.*, 629 F.3d at 941. "To recover for copyright infringement based on a breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's

complaint must be grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution."). *Id.* at 940. The "potential for infringement [thus] exists only where the licensee's action (1) exceeds the license's scope (2) in a manner that implicates some of the licensor's exclusive statutory rights." Citing to a Federal Circuit opinion, the Ninth Circuit raised the following example:

> Consider a license in which the copyright owner grants a person the right to make one and only one copy of a book with the caveat that the licensee may not read the last ten pages. Obviously, a licensee who made a hundred copies of the book would be liable for copyright infringement because the copying would violate the Copyright Act's prohibition on reproduction and would exceed the scope of the license. Alternatively, if the licensee made a single copy of the book, but read the last ten pages, the only cause of action would be for breach of contract, because reading a book does not violate any right protected by copyright law.

*Id.* (citing to *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1315–16 (Fed. Cir. 2005) (citation modified).

In *MDY*, the court held that the "antibot provisions at issue in this case . . . are . . . covenants rather than conditions. An [MDY software] user violates the covenants with Blizzard, but does not thereby commit copyright infringement because [the MDY software] does not infringe any of Blizzard's exclusive rights. For instance, the use does not alter or copy WoW software." *Id.* at 941. Actian's case requires the opposite outcome, based on the same reasoning. There is a clear nexus between a license condition and Actian's exclusive copyright. Actian has at least alleged that defendants exceeded the scope of the License Agreements by reproducing and distributing copies of the Actian Software throughout the Best Western network of hotels. *See* Compl. ¶ 41 (alleging that defendants copied and distributed one version of the Actian Software 696 times). The License Agreements limit a user's ability to copy and redistribute the Actian Software, and by allegedly breaching that condition, defendants will have necessarily infringed upon Actian's exclusive copyright. This is an actionable claim under the Copyright Act.

Because I conclude that Actian has adequately alleged a cause of action for direct copyright infringement, defendants' arguments that the derivative claims must be dismissed fail since those claims rise and fall with Actian's claim for direct infringement. The motion to dismiss is DENIED on this issue.

United States District Court
Northern District of California

**II.  Breach of Contract Claim**

Defendants next argue that Actian's fourth cause of action for breach of contract fails because (1) Actian fails to adequately allege a cause of action for breach of contract and (2) the claim runs afoul of the relevant statute of limitations period in any event.  Mot. 12–17.  I disagree.

To adequately allege a cause of action for breach of contract, a plaintiff must allege: "(1) [the] existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach, and (4) damages to plaintiff as a result of the breach."  *Naranjo v. Drs. Med. Ctr. of Modesto, Inc.*, 111 Cal. App. 5th 408, 430 (2025) (citations omitted).  Defendants argue that Actian fails to adequately plead the first and fourth required prongs.

First, defendants contend that Actian fails to plead the existence of a valid contract.  Mot. 13–14.  A valid contract requires that "1. Parties [are] capable of contracting; 2. Their [mutual] consent; 3. A lawful object, and 4. A sufficient cause or consideration."  *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1231 (2023).  Defendants assert that Actian "fails to plead that AutoClerk assented to the License Agreement."  Mot. 13.  They explain, without offering any evidence (judicially noticeable or otherwise), that the License Agreements were "browsewrap" agreements and therefore Actian never "conspicuously presented [the terms of the License Agreements] to the user."  Mot. 14.

This belies the clear language of the allegations made in the Complaint.  Actian alleges "[t]he v.10 License Agreements, v.11 License Agreement, and v.13 License Agreement are clickwrap agreements."  Compl. ¶ 14.  Actian pleaded that the License Agreements "require any individual or entity downloading or installing the Actian Software, including AutoClerk or other users, to affirmatively indicate consent to the terms prior to the downloading and installation of each version of the Actian Software, including any upgrades to a different version of the Actian Software."  *Id.*  Defendants instead ask me to look outside the Complaint (again, to no presented evidence) and simply believe their construction of the presentation of the terms.  I cannot do so.  *See Usher*, 828 F.2d at 561.  If defendants wish to challenge the sufficiency of mutual assent, they are free to do so at a later stage in this case with a complete presentation of relevant evidence.

Second, defendants argue that Actian fails to state a breach of contract claim because it

does not plead any damages in its complaint. Mot. 16–17. Defendants cite *Body Jewelz, Inc. v. Valley Forge Insurance Company*, where a court held that allegations of "thousands of dollars in damages" was sufficient to sustain a breach of contract claim insofar as damages were concerned. 241 F. Supp. 3d 1084, 1091 (C.D. Cal. 2017). Here, Actian pleaded damages in the form of "lost licensing revenue and lost fees" but did not allege an amount of lost revenue and lost fees. Compl. ¶ 77. *See also* Compl. ¶¶ 77–78 ("As a direct and proximate cause of Defendants' breaches, Actian suffered and continues to suffer harm and damages . . . Actian is entitled to damages for the breaches, including without limitation, actual and compensatory damages, indirect damages, and consequential damages."). Actian also alleges that the "breaches are ongoing." It is more than plausible that the alleged conduct of defendants caused Actian damages: Actian does not have to estimate a specific dollar amount in the Complaint. Discovery will sort out the amount of damages sustained.

Third, defendants contend that Actian's breach of contract claim falls outside the statute of limitations. Mot. 14–16. The statute of limitations for bringing a breach of contract claim is four years. Cal. Civ. P. Code § 337. Defendants argue that since AutoClerk first purchased access to the Actian Software in 2008 and last purchased access to the Actian Software in 2019, Actian's instant lawsuit (filed October 23, 2025) falls outside the range of either of those purchases. Mot. 15. This argument makes little sense.

Under California law, "a cause of action accrues at the time when the cause of action is complete with all of its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005). The "Discovery Rule" acts as an exception to the accrual rule and provides that "accrual of a cause of action [is postponed] until the plaintiff discovers, or has reason to discover, the cause of action." *Id.* at 807. To "rely on the discovery rule for delayed accrual of a cause of action, a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808.

At the earliest, the statute of limitations on a breach of contract claim begins to run on the breach, not on execution of the agreement. And it does not accrue until the breach is discovered.

12

Actian plausibly repeats throughout its complaint that it had no reason to "suspect facts" concerning breach of contract (or copyright) until 2024, when it learned that AutoClerk had assigned the License Agreements to Best Western without Actian's consent, and started its audit. Compl. ¶¶ 31–34.  Only at that point did Actian "have reason to at least suspect that a type of wrongdoing ha[d] injured" it.  *Fox*, 35 Cal. 4th at 807.

As explained by the California Supreme Court in *Fox*:

> A plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements."  Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. . . . [A] plaintiff's suspicion of "elements" of a cause of action . . . refer[s] to the "generic" elements of wrongdoing, causation, and harm. . . . Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them.

*Fox*, 35 Cal. 4th at 807.  For pleading purposes at least, Actian has alleged that it acted well within the four-year statute of limitations after discovering the possible breach in 2024.  Defendants' argument that Actian *could* have initiated an audit at any point within AutoClerk's 17-year use of the Actian Software is a red herring: Actian was allegedly unaware of AutoClerk's breach until 2024.  Defendants' motion is DENIED on the breach of contract claim.

### III. Jurisdictional Challenge

Defendants' jurisdictional challenge is mooted by my decision that Actian has adequately alleged claims rooted in violation of copyright law.  Mot. 17.

### CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: April 10, 2026



William H. Orrick
United States District Judge